# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
MAY 26 2026
JEFFREY P. COLWELL
CLERK

Civil Action No. ______________________________
(To be supplied by the court)

Eric P. Brandt DOC 191131, Plaintiff

v.

**Jury Trial requested:**
**(please check one)**
X Yes ____ No

DEFENDANTS 1-5,

SEE ATTACHED SB Pages 7-8,

______________________________,

______________________________, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

## PRISONER COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Eric Patrick Brandt #191131 11452 County Road B Manzanola, CO 81058
(Name, prisoner identification number, and complete mailing address)

N/A
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

___ Pretrial detainee
___ Civilly committed detainee
___ Immigration detainee
X Convicted and sentenced state prisoner
___ Convicted and sentenced federal prisoner
X Other: (*Please explain*) Community Corrections pursuant to §17-27-101 et seq C.R.S.

## B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: SEE ATTACHED
(Name, job title, and complete mailing address)

___

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

___

___

Defendant 1 is being sued in his/her ___ individual and/or ___ official capacity.

Defendants 1-5 on pages 7, 8

Defendant 2: ______________________________________________
(Name, job title, and complete mailing address)

______________________________________________

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

______________________________________________

______________________________________________

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3: ______________________________________________
(Name, job title, and complete mailing address)

______________________________________________

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

______________________________________________

______________________________________________

Defendant 3 is being sued in his/her ___ individual and/or ___ official capacity.

## C. JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

X State/Local Official (42 U.S.C. § 1983)

___ Federal Official

As to the federal official, are you seeking:

___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

X Other: (*please identify*) 28 USC. § 1331, federal question, 28 U.S.C. § 1343(a)(3), civil rights, 28 U.S.C. § 2201(a) declaratory relief

SEE page 8 #6

**D. STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate ~~that additional paper is attached and~~ label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

SEE ATTACHED – See Page 9

CLAIM ONE: ______________________________

Claim one is asserted against these Defendant(s):

Supporting facts:

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? X Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s): Brett Gargaglini, Darko Lukajic

Docket number and court: 19-CV-03706-000-MEH

Claims raised: Civil Rights, 1st amend & others

Disposition: (is the case still pending? has it been dismissed?; was relief granted?) Administrative closure following Defendant death

Reasons for dismissal, if dismissed: N/A

Result on appeal, if appealed: N/A

* Plaintiff does not recall the details of prior actions. No case has ever been deemed frivolous.

## F. ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

X Yes ___ No (*check one*)

Did you exhaust administrative remedies?

X Yes ___ No (*check one*)

**G. REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

SEE Attached Page 29

**H. PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Eric Brandt
(Plaintiff's signature)

2026 MAY 18
(Date)

(Revised November 2022)

**B. DEFENDANT(S) INFORMATION — CONTINUED**

1. Defendant 1: Jeremy M. Tafoya, Community Parole Supervisor, Colorado Department of Corrections, 4109 N. Elizabeth St., Pueblo, CO 81008. Defendant Tafoya is being sued in his individual and official capacities. At the time the claims in this complaint arose, Defendant Tafoya was acting under color of state law. Defendant Tafoya is a state-employed Community Parole Supervisor exercising supervisory authority delegated to him by the Colorado Department of Corrections pursuant to C.R.S. 17-27-101 et seq. and applicable Colorado Department of Corrections administrative regulations.

2. Defendant 2: Colorado Department of Corrections, a Colorado state agency, 1250 Academy Park Loop, Colorado Springs, CO 80910. Defendant Colorado Department of Corrections is being sued in its official capacity for injunctive and declaratory relief. At the time the claims in this complaint arose, Defendant Colorado Department of Corrections was acting under color of state law. Defendant is an executive agency of the State of Colorado responsible for the supervision of persons on parole and for the administration of community corrections placements pursuant to C.R.S. 17-27-101 et seq.

3. Defendant 3: Cecilia Kear, Director, Intervention Community Correction Services — Pueblo, 1901 N. Hudson Ave, Pueblo, CO 81001. Defendant Kear is being sued in her individual and official capacities. At the time the claims in this complaint arose, Defendant Kear was acting under color of state law. Defendant Kear directs a community corrections facility operating under contract with the Colorado Department of Corrections, exercises final policymaking authority over disciplinary and grievance-related decisions at that facility, and performs a function traditionally within the exclusive prerogative of the state. West v. Atkins, 487 U.S. 42 (1988).

4. Defendant 4: Intervention, Inc., d/b/a Intervention Community Correction Services — Pueblo, a Colorado nonprofit corporation, c/o Registered Agent Kelly Sengenberger, 2200 East 104th Ave #209, Thornton, CO 80233. Defendant Intervention, Inc. is being sued in its capacity as a state actor for entity liability pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). At the time the claims in this complaint arose, Defendant Intervention, Inc. was acting under color of state law. Defendant is a private nonprofit corporation operating a community corrections facility under contract with the Colorado Department of Corrections, performing functions exclusively within the traditional authority of the state. West v. Atkins, 487 U.S. 42 (1988). Entity ID: 20023003991, Colorado Secretary of State.

5. Defendant 5: Steve Medina, Hearing Officer, Intervention Community Correction Services — Pueblo, 1901 N. Hudson Ave, Pueblo, CO 81001. Defendant Medina is being sued in his individual and official capacities. At the time the claims in this complaint arose, Defendant Medina was acting under color of state law. Defendant Medina served as hearing officer and subordinate of Defendant Kear at Intervention Community Correction Services — Pueblo, exercising adjudicatory authority over institutional disciplinary proceedings, performing a function traditionally within the exclusive prerogative of the state. West v. Atkins, 487 U.S. 42 (1988).

**C. JURISDICTION AND VENUE — CONTINUED**

6. This civil rights action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights secured by the First and Fourteenth Amendments to the United States Constitution.

7. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

8. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b), as all Defendants reside within this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred within this district.

**D. STATEMENT OF CLAIMS — CONTINUED**

**NATURE OF CAUSE OF ACTION**

9. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking vindication of Plaintiff's constitutional rights, modification of an unconstitutional policy, and relief from the retaliatory weaponization of that policy. Defendants conditioned access to the mandatory PLRA grievance process on forfeiture of the right to consult counsel — a condition without constitutional basis — then punished Plaintiff for communicating with his attorneys, chilling his ability to seek relief on substantial documented violations and corrupting the institutional record that determines his liberty.

**STATEMENT OF FACTS**

10. The parties are fully identified in Section B of this complaint, incorporated herein by reference.

11. Plaintiff Brandt is a community corrections transitional client at ICCS-Pueblo under CDOC supervision.

12. The conduct of McElderry, Plaintiff's supervising CPO, and Vigil, Plaintiff's ICCS case manager, is referenced herein as predicate background only; their significant liabilities do not pierce the instant action.

**The Unlawful DVOMB Mandate**

13. The toxicity of this relationship is entirely of the state's creation.

14. For months from the outset of ICCS placement Plaintiff sought to understand the legal and clinical basis of his mandated domestic violence treatment knowing he lacked the required predicate offense.

15. Repeatedly the DVOMB provider aborted the evaluation for want of criminal justice records supporting the referral. Repeatedly the provider requested the information from ICCS and Parole. Repeatedly the referral remained defective.

16. Plaintiff repeatedly sought to identify the basis of the mandate using appropriate language and channels and was invariably told "the box is checked" and "comply or go back to DOC."

17. Gateway to Success confirmed in writing on 2026APR29 that after repeated attempts to cure the defective referral the provider could not proceed, and the state finally conceded the impasse — but not before causing irreparable harm.

**The Predicate Bias and First Contact**

18. On 2026MAR31 McElderry made first supervisory contact with Plaintiff. She confronted him in an extremely hostile and demeaning manner, alleging he was refusing domestic violence treatment. When Plaintiff attempted to clarify that he was seeking the legal and clinical basis of the mandate, McElderry's hostility escalated. When Plaintiff raised concerns about her conduct she stated "if you think I don't know who you are you'd be mistaken."

19. The gravity of the encounter prompted Plaintiff to immediately seek his supervision records, which he received on 2026APR13.

20. He discovered therein fabricated and grotesquely embellished chron entries mischaracterizing his lawful conduct as threatening. He discovered further that McElderry had been documenting a

derogatory narrative since 2026JAN27 — two months before their first meeting — entries wholly incongruent with his five-year institutional history and authored without a single supervisory contact having occurred.

21. Plaintiff served a litigation hold on 2026APR14 and commenced a series of discrete grievances addressing each documented offense.

22. Each grievance was denied solely because Plaintiff had forwarded it to counsel.

23. Plaintiff filed a fourth grievance on 2026MAY04 alleging criminal misconduct and triggering a mandatory OIG investigation.

24. On 2026MAY06 a mandatory meeting convened ostensibly to address the DVOMB mandate. The state conceded the impasse. The meeting then pivoted to Plaintiff's grievance conduct — the subject of the instant complaint.

25. Over Plaintiff's repeated objections the meeting was not recorded despite the present capability to do so.

26. Following that meeting Plaintiff obtained his records again and discovered that the second set was even more outrageous than the first.

27. Since discovering Plaintiff's capacity to obtain and identify patterns of misconduct, ICCS has categorically denied Plaintiff access to his supervision records, case manager recordings, and incident report documentation.

**<u>The Retaliatory Scheme</u>**

28. What began as documented individual misconduct by McElderry has now exploded through the ensuing disproportionate and documented institutional response into a coordinated unlawful

scheme involving supervisory and administrative actors at both ICCS and CDOC, to protect the original malfeasor and to amplify the pretextual record supporting regression.

29. The specific retaliatory acts comprising this scheme are detailed where appropriate throughout this complaint.

30. Institutional misconduct of this type is rarely documented and must be inferred from circumstantial evidence. Here, incredibly, the scheme is documented in Defendants' own records, authored by their own hands, spanning months of contemporaneous entries, and producing a robust body of evidence that speaks directly and without ambiguity to the retaliatory animus, coordination, and deliberate execution of the conduct challenged in this complaint.

31. At all relevant times Defendants acted knowingly, intentionally, willfully, wantonly, maliciously, and with deliberate indifference and reckless disregard of Plaintiff's clearly well-established constitutional rights, having received explicit constitutional warning from Plaintiff and having sought legal counsel of their own before proceeding with the challenged conduct.

32. Defendants' conduct has caused Plaintiff substantial and ongoing injury including poisoning of an otherwise model institutional record; contamination of his parole proceeding at the moment of maximum consequence to his liberty; loss of liberty and property interests; disruption of employment; interference with therapeutic programming and self-directed study integral to his rehabilitation; interference with personal relationships and community commitments; and the imposition of a state of perpetual terror that has pervaded every aspect of his daily life and from which he has been unable to obtain relief.

**ADDITIONAL ALLEGATIONS**

33. At all times relevant to this complaint Defendants were acting under color of state law. CDOC defendants are state actors. ICCS defendants perform functions traditionally reserved to the state pursuant to contract with CDOC.

34. Kear's ratification of each unconstitutional act or policy challenged herein, as final policymaker at ICCS-Pueblo, binds Intervention, Inc. for entity liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

35. Defendants are not entitled to qualified immunity because it is an unconstitutional judicial construct without statutory basis in 42 U.S.C. § 1983. Hencely v. Fluor Corp., __ U.S. __, 2026 WL 1083331 (2026); Baxter v. Bracey, 140 S. Ct. 1862 (2020); Hoggard v. Rhodes, 141 S. Ct. 2421 (2021).

36. That notwithstanding, Defendants are not entitled to qualified immunity because they violated clearly well-established rights enjoyed by Plaintiff.

37. Administrative remedies were rendered legally unavailable to Plaintiff within the meaning of Ross v. Blake, 578 U.S. 632, 643-44 (2016), by the very conduct that is the gravamen of this action.

38. Plaintiff has consulted counsel in connection with the claims presented in this complaint.

39. Pursuant to Tafoya's stated position, Plaintiff is structurally prohibited from pursuing administrative remedies to avoid further sanctions.

40. The PLRA exhaustion requirement is therefore excused and this action is properly before the Court.

41. Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

**CLAIM 1: AR 850-04 §C.5 UNCONSTITUTIONAL**

1st & 14th Amends. — Against All Defendants

42. Plaintiff incorporates all allegations in this complaint by reference.

43. The constitutional framework governing direct challenges to prison regulations is derived from Turner v. Safley, 482 U.S. 78, 89-91 (1987), as applied in this Circuit. See Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010). The right to pursue administrative remedies through an informed grievance is further grounded in Bounds v. Smith, 430 U.S. 817 (1977), and Lewis v. Casey, 518 U.S. 343 (1996). The jailhouse lawyer right implicated by this claim derives from Johnson v. Avery, 393 U.S. 483 (1969).

44. The elements of this claim are: (1) Plaintiff possessed rights secured by the First and Fourteenth Amendments to the United States Constitution; (2) CDOC Administrative Regulation 850-04 §C.5, on its face and as applied by Defendants, restricts or impinges upon those rights; (3) the restriction is not reasonably related to any legitimate penological interest under the four-factor test of Turner v. Safley, 482 U.S. 78 (1987); and (4) Defendants' enforcement of that restriction caused Plaintiff injury.

**Facial Unconstitutionality — Overbreadth and Vagueness**

45. AR 850-04 §C.5 provides in full: "An offender may only pursue a grievance concerning a problem that affects the offender personally and will pursue it without the assistance, involvement, or intervention of an agent or attorney."

46. The regulation contains no limiting principle distinguishing prohibited administrative proxy representation from constitutionally protected counsel communication, operates as an absolute prior restraint on counsel communication in the mandatory grievance process, and contains no

saving clause, no limiting construction, and no mechanism for case-by-case evaluation.

47. AR 850-04 §C.5 is unconstitutionally overbroad because it prohibits a substantial amount of constitutionally protected conduct while leaving analogous unprotected conduct unrestricted. The regulation restricts only counsel while leaving unrestricted all other forms of third-party consultation including family members, friends, and constitutionally protected jailhouse lawyers under Johnson v. Avery, 393 U.S. 483 (1969). The selective prohibition drawn at the line of licensure sweeps constitutionally protected counsel communication into its reach without any limiting principle justifying that distinction.

48. AR 850-04 §C.5 is unconstitutionally vague as applied because its operative terms — "assistance," "involvement," and "intervention" — provide no fair notice of where protected counsel consultation ends and prohibited participation begins, and permit arbitrary enforcement without procedural check.

49. Tafoya interpreted these terms to mean that merely consulting counsel about an issue permanently bars the grievance process thereof.

50. Tafoya documented this interpretation in the official CDOC supervision record.

51. This constitutionally repugnant interpretation is irreconcilable with any standard reading of the regulation.

52. The communications, protected by the First Amendment, penalized by Defendants' enforcement of AR 850-04 §C.5 included communications with criminal defense counsel and civil rights counsel on matters affecting not just Plaintiff's liberty but his criminal sentence, supervision conditions, and other legal interests, especially his discovery of the documented unlawful scheme to support a pretextual regression to DOC. Defendants imposed disciplinary consequences for that

communication.

**As-Applied Unconstitutionality**

53. Defendants interpreted and applied AR 850-04 §C.5 to prohibit Plaintiff from transmitting or copying counsel on grievance communications.

54. Defendants issued procedural denials on Grievances R-CM25/26-00318042-1, R-CM25/26-00318618-1, and R-CM25/26-00318619-1 solely because Plaintiff forwarded those grievances to counsel, each citing AR 850-04 §C.5 explicitly, without addressing the substance of any grievance on the merits.

55. On 2026MAY06 Plaintiff was held from his employment for two hours to attend a mandatory meeting.

56. Tafoya confirmed on direct questioning that any grievance filed after consulting counsel on that subject would be procedurally denied and would generate additional disciplinary action.

57. Tafoya documented in the official supervision record the false assertion that the grievance process has no legal ramifications.

58. This misrepresentation was designed to prevent Plaintiff from understanding his rights under 42 U.S.C. § 1997e(a).

59. This confirmed that Defendants interpret and enforce AR 850-04 §C.5 to foreclose the grievance process entirely upon any counsel consultation.

60. Kear issued Incident Report 26-1302 charging Plaintiff with a Rule 400 violation based solely on his communications with counsel regarding his grievances.

61. Each of Tafoya and Kear asserted they had consulted with their respective legal teams before

proceeding.

62. Each received Plaintiff's explicit constitutional warning before proceeding.

63. Medina's rubber-stamp guilty finding constitutes Intervention, Inc.'s ratification of the unconstitutional application of AR 850-04 §C.5.

64. The write-up and guilty finding were entered into Plaintiff's institutional record and appeared in the parole progression matrix submitted to the Colorado Parole Board.

**Turner v. Safley Analysis**

65. AR 850-04 §C.5 fails each prong of Turner v. Safley, 482 U.S. 78 (1987). First, no rational connection exists between the regulation and any legitimate penological interest — it targets only counsel while leaving family, friends, and constitutionally-protected jailhouse lawyer consultation entirely unrestricted, exposing its purpose as foreclosure of qualified legal guidance rather than administrative efficiency. Second, no meaningful alternative remains — the right to an informed grievance cannot be meaningfully exercised through unqualified consultation, and substituting an unqualified advisor for counsel destroys the right's substance. Third, accommodation imposes zero burden — Tafoya and Kear each consulted their own legal counsel in the very proceeding in which they penalized Plaintiff for doing the same. Fourth, the regulation is an exaggerated response — the less restrictive alternative was the operative condition: Plaintiff was at all times the primary signatory of his grievances and merely transmitted copies to counsel for safekeeping upon discovering a documented scheme to support a pretextual regression. The state penalized him for doing exactly what the obvious accommodation would permit.

**Injury**

66. Plaintiff suffered substantial and irreversible injury as a result of Defendants' enforcement of AR 850-04 §C.5, including: deprivation of his right to an informed grievance; disciplinary action for constitutionally protected conduct; destruction of a model institutional record; injection of a retaliatory disciplinary finding into the parole progression matrix presented to the authority holding ultimate power over his liberty; and ongoing chilling of his right to consult counsel on matters affecting his liberty by Defendants' documented prospective threat of further disciplinary action for future counsel consultation.

67. AR 850-04 §C.5 as written and as applied violates clearly established rights under the First and Fourteenth Amendments.

68. No legitimate penological interest was served by any act described herein. Each act served one purpose: to knock a legally active, constitutionally protected plaintiff down, corrupt the record that would determine his liberty, and guarantee that the institution's version of events — fabricated, retaliatory, and sanitized of every documented constitutional violation — would be the only version the Parole Board heard.

WHEREFORE, Plaintiff is entitled to judgment against Defendants in all aspects of this claim.

**CLAIM 2: RETALIATION**

1st Amend. — Against All Defendants

69. Plaintiff incorporates all allegations in this complaint by reference.

70. The elements of a First Amendment retaliation claim are: (1) Plaintiff was engaged in constitutionally protected activity; (2) Defendants' actions caused Plaintiff to suffer injury that would chill a person of ordinary firmness from continuing the protected activity; and (3) the

protected activity was a substantial or motivating factor in Defendants' decision to take the adverse action. Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000); Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010).

71. Plaintiff possesses clearly established First Amendment constitutional rights to petition for redress of grievances, to communicate and associate with legal counsel, to announce his intent to seek judicial relief, and to meaningfully access the courts.

72. Plaintiff maintained a model institutional record for five years preceding 2026MAR31.

73. On 2026MAR31 McElderry made contact with Plaintiff during which she confronted him in an extremely hostile manner for "refusing" to engage in domestic violence treatment. When Plaintiff raised concerns about how she was treating him she stated "if you think I don't know who you are you'd be mistaken." The relationship soured from there.

74. Plaintiff's institutional record degraded rapidly and in direct response to each protected act he took thereafter.

75. Concerned, Plaintiff requested and obtained his supervision records, which he received on 2026APR13.

76. His concerns proved justified — the records revealed intrinsic supervision bias and fabricated and grotesquely embellished chron entries mischaracterizing lawful conduct as threatening.

77. Plaintiff immediately served a litigation hold on 2026APR14 to preserve recordings of the 2026MAR31 encounter.

78. A staffing meeting ensued immediately and within minutes of its conclusion McElderry documented the retaliatory responses including the increased community threat risk designation and the targeted increased frisking directive.

79. Plaintiff filed three distinct grievances between 2026APR20 and 2026APR23. All three were denied within days, each citing AR 850-04 §C.5, none reviewed on the merits. Plaintiff immediately escalated to Step 2 on each.

80. On 2026APR29 Defendants convened an executive coordination meeting specifically targeting Plaintiff's grievance filings and his "confrontations."

81. Later on 2026APR29 Gateway to Success provided written confirmation that after repeated attempts to cure the state's legally and clinically defective domestic violence treatment referral the provider could not proceed with the mandated program.

82. On 2026MAY04 Plaintiff filed the fourth grievance alleging criminal misconduct against McElderry triggering a mandatory OIG investigation.

83. On 2026MAY06 Defendants convened a mandatory meeting with insufficient notice to Plaintiff's employer, holding Plaintiff from his employment for two hours at a critical lunch preparation time.

84. Defendants finally conceded the DVOMB impasse and then pivoted immediately to Plaintiff's grievance filings.

85. Tafoya confirmed on direct questioning that consulting counsel before filing a grievance and filing multiple grievances in succession would result in disciplinary action.

86. AR 850-04 §IV.A.5 expressly prohibits retaliation for "any action or threat of action against anyone for the good faith participation in the grievance procedure."

87. Plaintiff's filing of grievances was at all times in good faith.

88. Tafoya denied Grievances R-CM25/26-00318042-1, R-CM25/26-00318618-1, and R-CM25/26-00318619-1 on procedural grounds solely because Plaintiff communicated with counsel.

89. Kear issued Incident Report 26-1302 charging Plaintiff with a Rule 400 violation based solely on his communication with counsel regarding his grievances.

90. Kear falsely stated Class IV IRs carry no sanctions.

91. Indeed they do: derogatory disciplinary entry on the cusp of a parole hearing tainting an otherwise model institutional record spanning five years; loss of weekly good behavior points; and chore sanction exposure.

92. Immediately following the 2026MAY06 meeting, IR 26-1303 was issued for a sign-out failure occurring as a direct and proximate result of Defendants holding Plaintiff from his employment for two hours with insufficient notice, leaving him in a disrupted state upon his belated departure for work.

93. Medina summarily entered a guilty finding on IR 26-1302 on 2026MAY08 without addressing any submitted defense and without entering independent findings of fact.

94. Both IR 26-1302 and IR 26-1303 were entered into the parole progression matrix submitted to the Colorado Parole Board within days of Plaintiff's parole plan submission, contaminating the liberty-determining proceeding with retaliatory disciplinary findings.

95. Tafoya documented in the official CDOC supervision record his characterization of Plaintiff's announcement of intent to litigate as a threat against law enforcement officers, threatening Plaintiff with potential criminal jeopardy for exercising a constitutional right.

96. Every adverse characterization Defendants used to color Plaintiff as defiant, recalcitrant, and a community safety threat was a product of Defendants' own misconduct and that of their colleagues. Plaintiff has been vindicated on each.

97. Plaintiff's protected activity was a substantial and motivating factor in each adverse action taken by

Defendants, as documented in Defendants' own official records.

98. The causal connection between Plaintiff's protected activity and each adverse action is not inferential — it is documented in Defendants' own official records, made after Defendants consulted their own legal counsel, and after receiving Plaintiff's explicit constitutional warning that the conduct was unlawful.

99. None of the adverse actions taken by Defendants — including the disciplinary write-ups, the matrix contamination, and the deprivation of counsel — were reasonably related to any legitimate penological or security interest; they were exclusively pretextual mechanisms deployed to punish Plaintiff's protected speech.

100. Even Mr. Brandt, a person of extraordinary firmness, has been terrorized and chilled by Defendants' retaliatory misconduct.

101. Defendants' conduct as described herein violated Plaintiff's clearly well-established rights secured by the First Amendment to petition for redress of grievances, to communicate and associate with legal counsel, to announce his intent to seek judicial relief, and to meaningfully access the courts.

WHEREFORE, Plaintiff is entitled to judgment against Defendants in all aspects of this claim.

## CLAIM 3: ACCESS TO COURTS

1st Amend. — Against All Defendants

102. Plaintiff incorporates all allegations in this complaint by reference.

103. Plaintiff possesses the clearly established constitutional right to meaningful access to courts, and inherent in that right is the right to communicate with legal counsel in connection with the evaluation and pursuit of that access. Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey,

518 U.S. 343 (1996); Mann v. Reynolds, 46 F.3d 1055, 1060-61 (10th Cir. 1995).

104. Tafoya denied Grievances R-CM25/26-00318042-1, R-CM25/26-00318618-1, and R-CM25/26-00318619-1 solely because Plaintiff forwarded those grievances to counsel, citing AR 850-04 §C.5 explicitly in each denial, without reviewing the substance of any grievance on the merits.

105. Tafoya documented a deliberate misrepresentation in the official CDOC supervision record — falsely asserting the grievance process has "no legal ramifications" — specifically designed to mislead Plaintiff regarding his mandatory exhaustion obligations under 42 U.S.C. § 1997e(a).

106. Tafoya characterized Plaintiff's filing of multiple grievances in rapid succession and before the first grievance was responded to as abuse of the grievance process.

107. Kear issued Incident Report 26-1302 charging Plaintiff with a Rule 400 violation based solely on his communication with counsel regarding his grievances, which was ratified by Medina's rubber-stamp guilty finding.

108. Tafoya threatened further disciplinary action were Plaintiff to continue filing grievances and consulting with counsel.

109. As a direct result of Defendants' conduct, Plaintiff suffered actual injury because he was permanently deprived of the legal counsel necessary to evaluate, safely exhaust, and litigate specific, newly discovered, nonfrivolous constitutional claims.

110. By way of exemplar, the nonfrivolous underlying claims Plaintiff was actively prevented from developing with counsel include: (A) First Amendment Retaliation — a 2026APR02 incident in which a named CPO unlawfully coordinated with Gateway to Success to weaponize Plaintiff's mandatory clinical treatment as a surveillance and compliance mechanism in direct response to Plaintiff's protected speech regarding his intent to involve counsel; (B) First and Fourth

Amendment Retaliation — a 2026APR14 directive pathologizing Plaintiff's protected speech and research activity by classifying it as a community safety threat to justify targeted retaliatory physical searches before case manager meetings; and (C) First Amendment — the deliberate and documented pattern of moving all official interactions with Plaintiff into unrecorded spaces following his successful preservation of footage from the 2026MAR31 incident, including the 2026APR28 grievance service contact conducted in an unrecorded office rather than the recorded security space where such contacts ordinarily occur — each nonfrivolous on its face and each implicating the First Amendment, the Fourth Amendment, or both, among others that remain under active development.

111. Plaintiff has specifically refrained from consulting counsel on these and other novel and substantial claims for fear that doing so would trigger further disciplinary action, further corruption of the supervision record, and further liberty and property deprivations.

112. Unlawful conditions remain in force. The parole board proceeding is imminent. Plaintiff has no adequate remedy at law, and no remedy exists outside this suit capable of enjoining the unconstitutional enforcement of AR 850-04 §C.5 and restoring Plaintiff's right to safely communicate with counsel on claims bearing directly on his liberty and other substantial interests.

WHEREFORE, Plaintiff is entitled to judgment against Defendants in all aspects of this claim.

## CLAIM 4: ADMINISTRATIVE REMEDIES FORECLOSED

14th Amend. — Against All Defendants

113. Plaintiff incorporates all allegations in this complaint by reference.

114. The Prison Litigation Reform Act requires exhaustion of available administrative remedies before

a prisoner may file a civil rights action in federal court. 42 U.S.C. § 1997e(a). The PLRA thereby transformed the CDOC grievance process from a discretionary internal mechanism into the exclusive mandatory gateway to federal court. A state-created mandatory procedure carries due process protections in its administration. Mathews v. Eldridge, 424 U.S. 319 (1976). The elements of this claim are: (1) Plaintiff possessed a protected interest in access to the mandatory PLRA administrative process and through it to federal court; (2) Defendants administered that process subject to an unconstitutional condition foreclosing Plaintiff's access; and (3) no legitimate penological justification exists for the deprivation.

115. Defendants applied AR 850-04 §C.5 to transform the mandatory PLRA gateway into a forfeiture trap: Plaintiff could access the grievance process only by surrendering his constitutional right to consult counsel, or retain his right to counsel only by losing access to the exclusive pathway to federal court. Defendant Tafoya confirmed this condition on direct questioning and compounded it by documenting the false assertion that the grievance process has no legal ramifications — a deliberate misrepresentation designed to prevent Plaintiff from understanding his PLRA obligations and constitutional rights. Three grievances were denied on this basis, their merits never reviewed.

116. Under Mathews v. Eldridge, the private interest at stake — access to federal court on constitutional claims affecting Plaintiff's liberty — is substantial. The risk of erroneous deprivation is total: the process is not degraded but eliminated by the condition applied. The government's interest is negligible: an obvious less restrictive alternative exists at zero institutional cost, and Defendants themselves consulted counsel freely in administering the same process. The Mathews balance compels the conclusion that the administration of the mandatory

PLRA process subject to this unconstitutional condition denied Plaintiff procedural due process.

117. As a direct result of Defendants' conduct, Plaintiff was deprived of his ability to exhaust administrative remedies on three separately grievable constitutional violations, was foreclosed from federal court on those claims, and was compelled to choose between his right to counsel and his right to access federal court.

118. Defendants' conduct violated Plaintiff's clearly established right under the Fourteenth Amendment to procedural due process in the administration of the mandatory PLRA grievance process.

WHEREFORE, Plaintiff is entitled to judgment against Defendants in all aspects of this claim.

## CLAIM 5: DEFECTIVE DISCIPLINARY PROCEEDING

14th Amend. — Against Kear, Medina, and Intervention, Inc.

119. Plaintiff incorporates all allegations in this complaint by reference.

120. Wolff v. McDonnell, 418 U.S. 539 (1974), requires at minimum a written statement by the factfinder of the evidence relied upon and reasons for disciplinary action. Sandin v. Conner, 515 U.S. 472 (1995), establishes that a disciplinary finding imposing atypical and significant hardship implicates a protected liberty interest. The elements of this claim are: (1) Plaintiff possessed a protected liberty or property interest; (2) Defendants deprived Plaintiff of that interest; and (3) the deprivation occurred without constitutionally adequate process.

121. Kear is the Program Director of ICCS-Pueblo and the final unappealable authority over this disciplinary determination.

122. Yet Kear herself issued Incident Report 26-1302 on 2026MAY06 charging Plaintiff with a Rule 400 violation.

123. Plaintiff timely submitted a written not-guilty defense laying out the constitutional defects associated with penalizing counsel communications.

124. Upon information and belief, Medina is subordinate to Kear.

125. Medina entered a guilty finding without addressing any submitted defense, without entering independent findings of fact, and without identifying any evidence relied upon.

126. No evidence supports this finding because the underlying conduct — communicating with counsel regarding grievances — is constitutionally protected. Superintendent v. Hill, 472 U.S. 445 (1985).

127. The Fourteenth Amendment prohibits an official from occupying inconsistent partisan and judicial roles in the same proceeding. Ward v. Village of Monroeville, 409 U.S. 57 (1972). Kear issued the charge, appointed the adjudicator, and served as the final unappealable reviewing authority over the finding — depriving Plaintiff of a fair and impartial tribunal in violation of the Fourteenth Amendment.

128. The guilty finding was injected into the parole progression matrix submitted to the Colorado Parole Board, imposing atypical and significant hardship on Plaintiff's liberty interests.

129. The conduct of Kear and Medina violated Plaintiff's clearly established right under the Fourteenth Amendment to procedurally adequate process before deprivation of any protected interests.

130. Plaintiff suffered substantial injury including destruction of a five year unblemished disciplinary record, contamination of his parole proceeding, loss of program benefits and earned disciplinary standing, and loss of or delay in the realization of his liberty and property interests.

WHEREFORE, Plaintiff is entitled to judgment against Defendants in all aspects of this claim.

**CLAIM 6: RETALIATORY CRIMINAL THREAT**

1st Amend. — Against Defendant Tafoya

131. Plaintiff incorporates all allegations in this complaint by reference.

132. A retaliatory threat of criminal prosecution for engaging in constitutionally protected activity is independently actionable under the First Amendment regardless of whether prosecution follows. Hartman v. Moore, 547 U.S. 250 (2006); Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010). The elements of this claim are: (1) Plaintiff engaged in constitutionally protected petitioning activity; (2) Defendant's conduct would chill a person of ordinary firmness from continuing that activity; and (3) Plaintiff's protected activity was a substantial or motivating factor in Defendant's conduct.

133. Plaintiff engaged in constitutionally protected petitioning activity by announcing his intent to pursue litigation against Defendants during the 2026MAY06 meeting.

134. Defendant Tafoya characterized Plaintiff's announcement of litigation as threatening law enforcement officers.

135. Defendant Tafoya's own supervision log memorializes this characterization.

136. Defendant Tafoya's characterization exposed Plaintiff to potential criminal jeopardy for exercising a constitutional right.

137. Defendant Tafoya's implied threat characterizing protected petitioning as basis for criminal threatening violated Plaintiff's clearly established right pursuant to the First Amendment to speak and to be free from retaliation.

138. Plaintiff suffered injury including severe chilling of future protected petitioning activity.

WHEREFORE, Plaintiff is entitled to judgment against Defendants in all aspects of this claim.

**G. REQUEST FOR RELIEF — CONTINUED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief against each Defendant as specified herein:

**I. EQUITABLE RELIEF — ALL DEFENDANTS**

a. DECLARE that the right to consult legal counsel on any matter affecting one's rights, liberty, or interests and the right to petition through the CDOC grievance process are constitutionally protected rights that are inextricably intertwined, and that neither may be conditioned upon the forfeiture of the other by any administrative policy, rule, or practice.

b. DECLARE that AR 850-04 §C.5 is unconstitutional on its face and as applied by Defendants, in that it contains no limiting principle sufficient to prevent its application to attorney communication in the context of active or anticipated litigation, and that its enforcement without a constitutionally compliant saving clause or amendment is void.

c. ENJOIN Defendants, their agents, employees, successors, and all persons acting in concert with them from enforcing AR 850-04 §C.5 in any manner that penalizes, forecloses, denies, or discourages the consultation of legal counsel in connection with the grievance process, unless and until a constitutionally compliant saving clause or amendment has been adopted and approved by this Court.

d. ENJOIN Defendants from engaging in any further retaliatory conduct against Plaintiff arising from his exercise of the right to petition, his consultation of legal counsel, or his pursuit of this or any related litigation.

e. ORDER the reversal of Incident Report 26-1302 and the associated guilty finding entered

2026MAY08, and ORDER the reversal of all adverse actions causally flowing therefrom, including the disciplinary finding arising from the sign-out failure on 2026MAY06 documented as IR 26-1303, which occurred as a direct and proximate result of the retaliatory proceeding that generated the original write-up; and ORDER curative entries into Plaintiff's official CDOC supervision record reflecting these reversals.

f. ORDER that all supervision contacts, disciplinary proceedings, grievance response meetings, and any other official interactions between Defendants or their agents and Plaintiff be recorded by body-worn camera or equivalent audio-video recording technology, with recordings preserved and made available to Plaintiff upon request.

**II. DAMAGES — DEFENDANT TAFOYA INDIVIDUALLY, DEFENDANT KEAR INDIVIDUALLY, DEFENDANT MEDINA INDIVIDUALLY, AND DEFENDANT INTERVENTION INC. AS ENTITY ONLY** (MONELL)

NOTE: No MONETARY damages are sought against the Colorado Department of Corrections [redacted] ~~Defendant in their official capacity~~.

g. AWARD Plaintiff compensatory and consequential damages in amounts to be determined at jury trial, including but not limited to: lost wages; lost program benefits; harm to Plaintiff's institutional record; loss of or delay in the realization of liberty interests arising from the contamination of Plaintiff's parole proceeding with retaliatory disciplinary findings; extreme emotional distress and terror occasioned by a deliberate scheme targeting Plaintiff's liberty interests and diverting all available resources to his defense; loss of enjoyment of life; humiliation; loss of reputation; and pain and suffering.

h. AWARD punitive and exemplary damages in amounts to be determined at jury trial, based on Defendants' intentional, malicious, and reckless disregard for Plaintiff's clearly established constitutional rights, and their deliberate continuation of the challenged conduct after receiving explicit constitutional warning from Plaintiff and after seeking legal counsel of their own.

**III. FEES, COSTS, AND FURTHER RELIEF**

i. AWARD reasonable attorney fees pursuant to 42 U.S.C. § 1988, all recoverable costs pursuant to 28 U.S.C. § 1920 including filing fees, service fees, paralegal costs, investigatory costs, deposition costs, witness fees, and expert witness fees, and pre- and post-judgment interest at the highest lawful rate, on all claims allowed by law.

j. GRANT any further relief this Court deems just, equitable, and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**