FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
*4:43 pm, Jul 16, 2026*
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-02309-RTG
(To be supplied by the court)

ERIC P. BRANDT, Plaintiff

v.

**Jury Trial requested:**
**(please check one)**
**__X__ Yes ____ No**

1. JEREMY M. TAFOYA,

2. COLORADO DEPARTMENT OF CORRECTIONS,

3. CECILIA KEAR,

4. INTERVENTION, INC., d/b/a INTERVENTION COMMUNITY CORRECTION SERVICES — PUEBLO, Defendant(s).

**SEE ATTACHED LIST OF DEFENDANTS**

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

---

**VERIFIED FIRST AMENDED PRISONER COMPLAINT**

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

# LIST OF DEFENDANTS

1. JEREMY M. TAFOYA,

2. COLORADO DEPARTMENT OF CORRECTIONS,

3. CECILIA KEAR,

4. INTERVENTION, INC., d/b/a INTERVENTION COMMUNITY CORRECTION SERVICES — PUEBLO,

5. STEVE MEDINA,

6. BRIAN MUSSO,

7. DEMARQUES TAYLOR,

8. BRIAN HULSE, Defendant(s).

**A. PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Eric Patrick Brandt, DOC #191131, 11452 County Road B, Manzanola, CO 81058
(Name, prisoner identification number, and complete mailing address)

N/A
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____ Pretrial detainee
____ Civilly committed detainee
____ Immigration detainee
__X__ Convicted and sentenced state prisoner
____ Convicted and sentenced federal prisoner
__X__ Other: (*Please explain*) Community Corrections pursuant to §17-27-101 et seq., C.R.S.

**B. DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: Jeremy M. Tafoya, Community Parole Supervisor, Colorado Department of Corrections
(Name, job title, and complete mailing address)

4109 N. Elizabeth St., Pueblo, CO 81008

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ___ No (*check one*). Briefly explain:

State-employed Community Parole Supervisor exercising supervisory authority delegated by the Colorado Department of Corrections.

-

Defendant 1 is being sued in his/her __X__ individual and/or __X__ official capacity.

Defendant 2: Colorado Department of Corrections, a Colorado state agency
(Name, job title, and complete mailing address)

1250 Academy Park Loop, Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

Executive agency of the State of Colorado responsible for parole supervision and the administration of community corrections placements pursuant to C.R.S. 17-27-101 et seq.

-

Defendant 2 is being sued in his/her ___ individual and/or _X_ official capacity.

Defendant 3: Cecilia Kear, Director, Intervention Community Correction Services — Pueblo
(Name, job title, and complete mailing address)

1901 N. Hudson Ave, Pueblo, CO 81001

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

Performs custody and supervision functions under contract with and on behalf of the Colorado Department of Corrections; directs ICCS-Pueblo and exercises final authority over policy, programming, disciplinary and grievance decisions there.

-

Defendant 3 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 4: Intervention, Inc., d/b/a Intervention Community Correction Services — Pueblo, a Colorado nonprofit corporation
(Name, job title, and complete mailing address)

c/o Registered Agent Kelly Sengenberger, 2200 East 104th Ave #209, Thornton, CO 80233

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

Performs custody and supervision functions under contract with, and on behalf of, the Colorado Department of Corrections through Intervention Community Corrections Services (ICCS).

-

Defendant 4 is being sued in his/her ___ individual and/or _X_ official capacity.

Defendant 5: Steve Medina, Hearing Officer, Intervention Community Correction Services — Pueblo

(Name, job title, and complete mailing address)

1901 N. Hudson Ave, Pueblo, CO 81001

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

Performs custody and supervision functions under contract with, and on behalf of, the Colorado Department of Corrections; exercised adjudicatory authority over Plaintiff's disciplinary proceeding.

-

Defendant 5 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 6: Brian Musso, Community Parole Manager, Colorado Department of Corrections, Division of Adult Parole

(Name, job title, and complete mailing address)

4109 N. Elizabeth St., Pueblo, CO 81008

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

State-employed Community Parole Manager exercising supervisory authority delegated by the Colorado Department of Corrections.

-

Defendant 6 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 7: DeMarques Taylor, Case Manager Supervisor, Intervention Community Correction Services — Pueblo
(Name, job title, and complete mailing address)

1901 N. Hudson Ave, Pueblo, CO 81001

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

Performs custody and supervision functions under contract with, and on behalf of, the Colorado Department of Corrections as Case Manager Supervisor at ICCS-Pueblo.

-

Defendant 7 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 8: Brian Hulse, Executive Director, Intervention Community Corrections Services, a division of Intervention, Inc.
(Name, job title, and complete mailing address)

1651 Kendall St., Lakewood, CO 80214

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

Performs custody and supervision functions under contract with, and on behalf of, the Colorado Department of Corrections as Executive Director of Intervention Community Corrections Services (ICCS).

-

Defendant 8 is being sued in his/her _X_ individual and/or _X_ official capacity.

## C. JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

__X__ State/Local Official (42 U.S.C. § 1983)

____ Federal Official

As to the federal official, are you seeking:

___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

__X__ Other: (*please identify*) Subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3); venue proper under 28 U.S.C. § 1391(b) (all Defendants reside in this district and a substantial part of the events or omissions occurred here).

## D. STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

## FACTUAL ALLEGATIONS

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking vindication of Plaintiff's constitutional rights, modification of an unconstitutional policy, and relief from the retaliatory weaponization of that policy. Defendants conditioned access to the mandatory PLRA grievance process on forfeiture of the right to consult counsel — a condition without constitutional basis — then punished Plaintiff for communicating with

his attorneys, chilling his ability to seek relief on substantial documented violations and corrupting the institutional record that determines his liberty.

2. At all times relevant to this complaint Defendants were acting under color of state law. CDOC defendants are state actors. ICCS defendants perform functions traditionally reserved to the state pursuant to contract with CDOC.

3. Hulse, as Executive Director of Intervention Community Corrections Services, a division of Intervention, Inc., holds final decision-making authority over that entity's policies, disciplinary determinations, and grievance responses. Kear directs ICCS-Pueblo. Each planned, executed and ratified acts and policies relevant to the allegations in this complaint.

4. Plaintiff's filing of grievances was at all times in good faith.

5. Plaintiff maintained a model institutional record for the five years preceding Defendants' misconduct.

6. Tafoya and Kear advised Plaintiff that they had agreed to impose disciplinary consequences on him for having communicated with his lawyers about his grievances.

7. The conduct for which Plaintiff was charged — providing his lawyers copies of, and notice of, his grievances — is constitutionally protected and is not the agent-or-attorney-pursuing-a-grievance conduct that AR 850-04 §C.5 restricts.

8. On 2026APR29 at 0932 Tafoya, Musso, and McElderry met with Kear and Hulse; Tafoya's record of the meeting states that they "[d]iscussed concern of O not following policy per 850 04 Grievances" and that "[i]t was decided a meeting will occur with O ... to address concerns and way ahead for program compliance and cooperation."

9. Kear, ICCS Program Director, issued Incident Report 26-1302 on 2026MAY06 charging Plaintiff with a Class IV violation of ICCS Rule 400 as a pass-through from CDOC, the stated basis being that Plaintiff forwarded copies of his grievances by email to his lawyers allegedly in violation of AR 850-04 §C.5.

10. Medina, Kear's designee, summarily entered a guilty finding on IR 26-1302 on 2026MAY08 without addressing any submitted defense, without entering independent findings of fact, and identifying no evidence of any actual violation.

11. IR 26-1302 and IR 26-1303 were injected into the parole progression matrix submitted 2026MAY14, within days of Plaintiff's parole plan submission and before the 2026MAY28 parole hearing, contaminating the liberty-determining proceeding with retaliatory disciplinary findings in addition to the already poisoned chronological history.

12. Taylor, Kear's direct subordinate, denied Plaintiff's appeal on 2026MAY18, summarily affirming the guilty finding, addressing no defense argument, entering no findings of fact, and ignoring both the AR 750-03 regulatory conflict and the constitutional objections Plaintiff had raised.

## CLAIM ONE: AR 850-04 §C.5 UNCONSTITUTIONAL

*1st & 14th Amends. — Against All Defendants*

13. Plaintiff incorporates all allegations in this complaint by reference.

14. AR 850-04 §C.5 provides in full: “An offender may only pursue a grievance concerning a problem that affects the offender personally and will pursue it without the assistance, involvement, or intervention of an agent or attorney.”

15. AR 850-04 §C.5 targets only attorneys while leaving consultation with family, friends, other offenders or “jailhouse lawyers” unrestricted, subject only to facility security and

operational needs. This fails the Turner test by foreclosing qualified legal guidance while permitting every less-qualified source.

16. It is the Department of Corrections' policy to provide offenders access to their counsel and to assist offenders in making confidential contact with attorneys, including by telephone, uncensored correspondence, and meetings.
17. The Department's regulations permit offenders who need assistance to obtain help filing grievances from other offenders.
18. The Department's regulations permit third parties, including attorneys, to file grievance requests on an offender's behalf in matters alleging sexual abuse.
19. Defendants interpreted and applied AR 850-04 §C.5 to prohibit Plaintiff from transmitting or copying counsel on grievance communications.
20. Tafoya interpreted these terms to mean that merely consulting counsel about an issue permanently bars the grievance process thereof.
21. Tafoya documented this interpretation in the official CDOC supervision record.
22. Defendants issued procedural denials on Grievances R-CM25/26-00318042-1, R-CM25/26-00318618-1, and R-CM25/26-00318619-1 solely because Plaintiff forwarded those grievances to counsel, each citing AR 850-04 §C.5 explicitly, without addressing the substance of any grievance on the merits.
23. Tafoya confirmed on direct questioning that any grievance filed after consulting counsel on that subject would be procedurally denied and would generate additional disciplinary action.
24. This confirmed that Defendants interpret and enforce AR 850-04 §C.5 to foreclose the grievance process entirely upon any counsel consultation.

25. Each of Tafoya and Kear asserted they had consulted with their respective legal teams before proceeding.

26. Plaintiff suffered substantial and irreversible injury as a result of Defendants' enforcement of AR 850-04 §C.5, including: deprivation of his right to an informed grievance; disciplinary action for constitutionally protected conduct; destruction of a model institutional record; injection of a retaliatory disciplinary finding into the parole progression matrix presented to the authority holding ultimate power over his liberty; and ongoing chilling of his right to consult counsel on matters affecting his liberty by Defendants' documented prospective threat of further disciplinary action for future counsel consultation.

27. AR 850-04 §C.5, as written and as applied to Plaintiff, deprived him of rights secured by the First and Fourteenth Amendments.

**CLAIM TWO: RETALIATION**
*1st Amend. — Against All Defendants*

28. Plaintiff incorporates all allegations in this complaint by reference.

29. Plaintiff Brandt is a community corrections transitional client at ICCS-Pueblo under CDOC supervision.

30. The conduct of McElderry, Plaintiff's supervising CPO, and Vigil, Plaintiff's ICCS case manager, is referenced herein as predicate background only; their significant liabilities do not pierce the instant action at this stage.

31. Plaintiff possesses clearly established First Amendment constitutional rights to petition for redress of grievances, to communicate and associate with legal counsel, to announce his intent to seek judicial relief, and to meaningfully access the courts.

32. For months from the outset of his ICCS placement Plaintiff sought, through appropriate language and channels, to understand the legal and clinical basis of his mandated domestic violence treatment, knowing he lacked the required predicate offense, and was invariably told "the box is checked" and "comply or go back to DOC."

33. Gateway to Success confirmed in writing on 2026APR29 that, after repeated attempts to compel ICCS and Parole to cure their defective referral, the provider could not proceed; the state finally conceded the impasse — but not before causing irreparable harm.

34. On 2026MAR31 McElderry made first supervisory contact with Plaintiff. She confronted him in an extremely hostile and demeaning manner, alleging he was refusing domestic violence treatment. When Plaintiff attempted to clarify that he was seeking the legal and clinical basis of the mandate, McElderry's hostility escalated. When Plaintiff raised concerns about her conduct she stated "if you think I don't know who you are you'd be mistaken."

35. He discovered therein multiple false and salacious, fabricated chron entries, and others mischaracterizing his lawful conduct as threatening. He discovered further that McElderry had been documenting a derogatory narrative since 2026JAN27 — two months before their first meeting — entries wholly incongruent with his five-year institutional history and authored without a single supervisory contact having occurred.

36. Plaintiff's institutional record degraded rapidly and in direct response to each protected act he took thereafter.

37. Prompted by the gravity of the encounter, Plaintiff immediately requested his supervision records of the 2026MAR31 encounter, which he received on 2026APR13 from CDOC Records Specialist Austin Ayers.

38. Plaintiff began serving litigation holds and preservation notices on 2026APR14 to preserve recordings of the 2026MAR31 encounter and other records.

39. A staffing meeting ensued within minutes of process service, and within minutes of its conclusion McElderry documented discussion related to the litigation holds and the retaliatory institutional responses: an increased community threat risk designation; a targeted frisk protocol to ensure Plaintiff did not have any recording devices at meetings; and a requirement that at least two staff attend meetings as witnesses — claiming that Plaintiff was "making false statements about everything."

40. It was further implemented that cell phones would no longer be allowed in Case Manager meetings, presumably to feign the targeted nature of the recording-device fear.

41. It was further implemented that, in order to insulate McElderry from producing evidence, her client contacts would no longer occur in the security office as before, but rather inside Case Manager offices — preventing any record Plaintiff could preserve, and placing McElderry in a non-recorded space that Plaintiff entered only after being searched.

42. At no time did Plaintiff ever attempt to "smuggle" any recording device or initiate any recording of any staff interaction.

43. Between 2026APR20 and 2026APR23 Plaintiff filed three distinct grievances — R-CM25/26-00318042-1, R-CM25/26-00318618-1, and R-CM25/26-00318619-1. Tafoya denied all three within days, each on procedural grounds citing AR 850-04 §C.5 and solely because Plaintiff had forwarded them to counsel, none reviewed on the merits. Plaintiff immediately escalated each to Step 2.

44. On 2026MAY04 Plaintiff filed a fourth grievance alleging criminal misconduct against McElderry, which required a mandatory OIG investigation.

45. Later on 2026APR29 Gateway to Success provided written confirmation that after repeated attempts to cure the state's legally and clinically defective domestic violence treatment referral the provider could not proceed with the mandated program.

46. On 2026MAY06 CDOC CPS Tafoya and CPO McElderry, as well as ICCS Director Kear, CMS Taylor, and CM K. Vigil, without sufficient notice to Plaintiff's employer, held him back from his scheduled employment for two hours at a critical lunch-preparation time.

47. The mandatory 2026MAY06 meeting convened ostensibly to address the defective DVOMB mandate. Defendants conceded the impasse. The meeting then pivoted to Plaintiff's grievance conduct — the subject of the instant complaint.

48. Over Plaintiff's repeated and continuing objections, the meeting was not recorded despite the present capability to do so.

49. Tafoya confirmed on direct questioning that consulting counsel before filing a grievance, and filing multiple grievances in rapid succession, would result in disciplinary action.

50. Tafoya characterized Plaintiff's filing of multiple grievances in rapid succession and before the first grievance was responded to as abuse of the grievance process.

51. AR 850-04 §IV.A.5 expressly prohibits retaliation for "any action or threat of action against anyone for the good faith participation in the grievance procedure."

52. Kear falsely stated that Class IV IRs carry no sanctions. In fact they do: a derogatory disciplinary entry on the cusp of a parole hearing, tainting an otherwise model institutional record spanning five years; loss of weekly good-behavior points; and chore-sanction exposure.

53. Meanwhile, when the 2026MAY06 meeting ended, Plaintiff — disrupted by Defendants' two-hour hold and the confrontational proceeding described above — left immediately for work and, for the only time before or since, forgot to sign out. Hours later he was called back from work to sign out, whereupon Defendants issued IR 26-1303. But for Defendants' conduct, Plaintiff would not have failed to sign out or received the second IR.

54. When Plaintiff stated he would pursue litigation, Tafoya characterized that statement as a threat against law enforcement officers, and documented it as such in the official supervision record.

55. Plaintiff reasonably believed Tafoya's characterization placed him at credible risk of being indicted on a felony charge which, for a person in community corrections, would terminate placement and return him to full custody on the charge alone.

56. Although Plaintiff's communications with his attorneys are protected by the First Amendment, Defendants nevertheless weaponized enforcement of AR 850-04 §C.5 in an effort to dissuade him from engaging in future protected attorney and grievance conduct.

57. Tafoya threatened further disciplinary action were Plaintiff to continue filing grievances and consulting with counsel.

58. Plaintiff's protected activity — including self-advocacy, records preservation, attorney communication, and petitioning for redress of grievances — each constituted substantial and motivating factors in the adverse actions taken by Defendants.

59. In their own official records, Defendants documented their proximate and causal connections, escalating their adverse actions against Plaintiff immediately following Plaintiff's protected actions.

60. During the 2026MAY06 encounter, Plaintiff strenuously advised Defendants to consult with their own legal teams prior to committing further violations; Defendants admitted that they already had.

61. What began as individual misconduct by McElderry escalated, through the disproportionate institutional response that followed, into a coordinated effort by supervisory and administrative actors at ICCS and CDOC to protect the original wrongdoer and amplify the record supporting Plaintiff's regression.

62. At all relevant times Defendants acted knowingly, intentionally, willfully, wantonly, maliciously, and with deliberate indifference and reckless disregard of Plaintiff’s clearly well-established constitutional rights, having received explicit constitutional warning from Plaintiff and having sought legal counsel of their own before proceeding with the challenged conduct.

63. None of the adverse actions taken by Defendants — including the disciplinary write-ups, the matrix contamination, and the deprivation of counsel — were reasonably related to any legitimate penological or security interest; they were exclusively pretextual mechanisms deployed to punish Plaintiff's Constitutionally protected conduct.

64. Defendants’ conduct has caused Plaintiff substantial and ongoing injury including poisoning of an otherwise model institutional record; contamination of his parole proceeding at the moment of maximum consequence to his liberty; loss of liberty and property interests; disruption of employment; interference with therapeutic programming and self-directed study integral to his rehabilitation; interference with personal relationships and community commitments; and the imposition of a state of perpetual

terror that has pervaded every aspect of his daily life and from which he has been unable to obtain relief.

65. Plaintiff has been chilled by Defendants' misconduct.

66. Defendants issued the disciplinary charges and guilty findings, fabricated and embellished Plaintiff's record entries, contaminated the parole progression matrix, threatened further discipline, and threatened criminal charges because Plaintiff engaged in constitutionally protected activity, to wit and not limited to: questioning medical treatment, filing grievances, preserving records, communicating with counsel, and announcing his intent to seek judicial relief.

67. But for Defendants' retaliatory motive, none of those adverse actions would have been taken against Plaintiff.

68. Defendants’ conduct as described herein violated Plaintiff’s clearly well-established rights secured by the First Amendment to petition for redress of grievances, to communicate and associate with legal counsel, to announce his intent to seek judicial relief, and to meaningfully access the courts.

## CLAIM THREE: ACCESS TO COURTS

69. Plaintiff does not reassert his Access to Courts claim in this Amended Complaint. Omission is without prejudice and shall not constitute waiver or abandonment; Plaintiff reserves the right to seek leave to amend to assert such claim should continued development of the record so warrant.

## CLAIM FOUR: ADMINISTRATIVE REMEDIES FORECLOSED

*14th & 1st Amends. — Against All Defendants*

70. Plaintiff incorporates all allegations in this complaint by reference.

71. The Prison Litigation Reform Act requires exhaustion of available administrative remedies before a prisoner may bring a civil-rights action; the grievance process is therefore the mandatory, exclusive prerequisite to federal court.

72. AR 850-04 requires community-corrections transitional clients to use the Department's grievance procedure.

73. Defendants disciplined Plaintiff under AR 850-04 for the manner in which he used the grievance process, confirming he was required to use it.

74. At the 2026MAY06 meeting Tafoya recited AR 850-04 §C.5, stating an offender must pursue a grievance without the assistance, involvement, or intervention of an agent or attorney.

75. On Plaintiff's clarifying questions, Tafoya confirmed that once Plaintiff consulted counsel about an issue he could no longer grieve it, and that grieving it anyway would place him in violation of the AR and subject to discipline.

76. Tafoya documented in the supervision record the assertion that the grievance process “has no legal ramifications.”

77. Tafoya denied the first four grievances (R-CM25/26-00318042, -00318618, -00318619, -00319379) on procedural grounds citing §C.5 because Plaintiff forwarded them to counsel, none reviewed on the merits.

78. Musso denied the Step 2 escalations of the first three grievances on procedural grounds, none reviewed on the merits.

79. Defendants consulted their own legal counsel in the same proceeding in which they penalized Plaintiff for consulting his.

80. Plaintiff was at all times the primary drafter and signatory of his own grievances and merely transmitted copies to counsel.

81. No legitimate penological interest was served by conditioning the mandatory process on non-consultation with counsel.

82. Plaintiff was compelled to choose between his First Amendment right to consult counsel and access to the mandatory gateway to court.

83. Plaintiff was deprived of qualified legal counsel at the administrative-exhaustion stage, where claims are shaped, framed, and preserved.

84. Plaintiff was disciplined for exercising the right; the disciplinary finding entered his permanent institutional record and the parole progression matrix.

85. Defendants violated Plaintiff's clearly established Fourteenth Amendment rights to both substantive and procedural due process in administering the mandatory grievance process, and burdened his First Amendment rights to consult counsel, to petition, and to access the courts.

## CLAIM FIVE: DEFECTIVE DISCIPLINARY PROCEEDING

*14th Amend. — Against Kear, Medina, Taylor, and Intervention, Inc.*

86. Plaintiff incorporates all allegations in this complaint by reference.

87. Plaintiff's parole is conditioned on completing the program governed by that matrix.

88. On 2026APR29 and 2026MAY06 Defendant Tafoya documented Plaintiff as non-compliant with program policy — AR 850-04 and AR 250-15 Community Corrections

Program Supervision Standards — and tied that characterization to required enhanced treatment and "program progression."

89. An offender characterized as non-program-compliant is subject to enhanced programming and adverse progression; on information and belief, the supervision record is reviewed by the parole decision-makers in exercising their discretion.

90. Plaintiff timely submitted a written not-guilty defense enumerating the regulatory and constitutional defects in the charge.

91. Plaintiff appealed the guilty finding.

92. Taylor attended the 2026MAY06 meeting at which the charge decision was made.

93. No official independent of the charging authority reviewed the charge at any stage: Kear issued the charge, her designee Medina adjudicated it, and her subordinate Taylor (physically present at the charge meeting) denied the appeal.

94. The guilty finding poisoned Plaintiff's otherwise model five-year institutional record and contaminated the parole proceeding.

95. The non-compliance mischaracterization exposed Plaintiff to enhanced programming/treatment and adverse program progression.

96. Kear, Medina, and Taylor violated Plaintiff's clearly established Fourteenth Amendment rights to procedurally adequate process, a fair and impartial tribunal, and freedom from arbitrary deprivation of a protected interest.

## CLAIM SIX: RETALIATORY CRIMINAL THREAT

*1st Amend. — Against Defendant Tafoya*

97. Plaintiff incorporates all allegations in this complaint by reference.

98. Plaintiff engaged in constitutionally protected petitioning activity by announcing his intent to pursue litigation against Defendants during the 2026MAY06 meeting.

99. Tafoya threatened further disciplinary action were Plaintiff to continue filing grievances after communicating with his lawyers.

100. Plaintiff stated he would pursue litigation if Defendants violated his rights, and that although he did not want to include the Director in a lawsuit, he would if Defendants proceeded with disciplining him for communicating with his lawyers.

101. As the meeting was ending, Tafoya told Plaintiff, in a highly demeaning and condescending tone: “Go get your treatment Mr. Brandt, you need it!”

102. Plaintiff responded that he would get his treatment and that Defendants would get theirs.

103. Tafoya immediately declared that Plaintiff was “now threatening law enforcement officers.”

104. When Plaintiff denied threatening any law enforcement officers, Tafoya replied, “yes you did. you just threatened to sue the Director [Kear] if she writes you up!”

105. Plaintiff replied that this was not a threat but a promise — that if Defendants proceeded as stated, he would provide them with their legal treatment.

106. Tafoya’s sanitized supervision log entry (authored several hours later) recasts this exchange by omitting his own provocations and the seriousness of his tone. He further inverts the clarification: he never asked Plaintiff to clarify anything. He simply issued the accusation, and Plaintiff offered the clarification unprompted.

107. By recasting Plaintiff’s advisement that he would litigate the constitutional violation as “threatening law enforcement officers,” Tafoya signalled that he considered Plaintiff’s statements to be criminal in nature.

108. At the moment of the accusation Plaintiff was aware, from prior experience and general knowledge, that individuals are arrested and charged when litigation-related statements are recharacterized as criminal threats, and he genuinely and reasonably feared imminent prosecution.

109. This was especially frightening to Plaintiff given the rapidly degenerating conduct and posture of these very actors, where it is well known that a criminal allegation alone would be sufficient to terminate his placement and regress him to full custody status.

110. Given these circumstances, Plaintiff reasonably believed he would be charged with threatening law enforcement and arrested at any moment.

111. Plaintiff's reasonable fear over this statement persisted for weeks, and the distress it caused was outwardly manifest and observed by others.

112. Plaintiff suffered injury, including severe emotional distress and terror.

113. The terror imposed by Tafoya prompted Plaintiff to act swiftly and decisively to protect himself from what he believed were otherwise imminent, irreparable injuries.

114. Tafoya's conduct described herein would chill a person of ordinary firmness from engaging in similar protected speech activity.

115. Tafoya made the criminal-threat accusation because of, and only because of, Plaintiff's statement that he would sue.

116. Tafoya's implied threat characterizing protected petitioning as a basis for criminal threatening violated Plaintiff's First Amendment right to speak and to be free from retaliation.

## CLAIM SEVEN: CONSPIRACY (42 U.S.C. § 1983)

*1st & 14th Amends. — Against Tafoya, Musso, Kear, Hulse, Taylor, and Medina*

117. Plaintiff incorporates all allegations in this complaint by reference.

118. McElderry's conduct is referenced as background only; Plaintiff seeks no relief for it in this claim.

119. Following the 2026MAR31 incident with McElderry, Plaintiff requested his supervision records.

120. Plaintiff received his supervision records on 2026APR13 and noticed substantial false and defamatory statements in McElderry's entries.

121. Plaintiff took actions to (1) preserve records, including security surveillance recordings, and (2) initiate good-faith grievances for discrete acts of misconduct.

122. On 2026APR14 at 1247 a process server served a litigation hold preserving the security footage of the 2026MAR31 incident with McElderry. A staffing meeting immediately followed, and McElderry documented discussions pathologizing Plaintiff's protected conduct and decisions made to curtail him.

123. On 2026APR20, 2026APR22, and 2026APR23 Plaintiff filed three grievances concerning McElderry's conduct.

124. By 2026APR27 Tafoya had denied all three grievances, citing AR 850-04 §IV.C.5, because Plaintiff had copied them to his attorneys.

125. Musso is a CDOC Community Parole Manager. Tafoya and McElderry are subordinate to him.

126. Hulse is the Executive Director of Intervention Community Corrections Services, a division of Intervention, Inc., the private contractor operating the facility. Kear is subordinate to him.

127. On information and belief, each individual present at the 2026APR29 meeting participated in the discussion and developed and agreed to the course of conduct alleged herein: to discipline Plaintiff for forwarding his grievances to his attorneys, and to condition his access to the grievance process on his not consulting them.

128. On information and belief, Defendants met and communicated about Plaintiff's grievance activity on multiple occasions in addition to those alleged herein; Medina and Taylor, among others unknown at this time, participated in such meetings with Kear and others concerning the course of action taken against Plaintiff.

129. On 2026MAY05 Case Manager K. Vigil informed Plaintiff that he would need to be onsite the following morning at approximately 1000 for a meeting with Parole. She advised that the meeting took precedence over his scheduled work shift. She further advised that they would meet in private first and that Plaintiff would be called in when they were ready.

130. On the morning of 2026MAY06 the private meeting commenced. Tafoya and McElderry appeared virtually for CDOC; Kear, Taylor, and K. Vigil were physically present.

131. Plaintiff was called into the meeting around 10:00.

132. The hearing officer, Medina, summarily found Plaintiff guilty; Taylor then summarily denied Plaintiff's appeal.

133. The agreement and the acts taken in furtherance of it deprived Plaintiff of rights secured by the First and Fourteenth Amendments.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s): Bret Garegnani, Darko Lukajic

Docket number and court: 19-cv-03706-000-MEH (D. Colo.)

Claims raised: Civil rights, 1st Amendment & others

Disposition: (is the case still pending?

has it been dismissed?; was relief granted?) Administrative closure following defendant death

Reasons for dismissal, if dismissed: N/A

Result on appeal, if appealed: N/A

*Plaintiff does not recall the details of prior actions. No case has ever been deemed frivolous.*

**F. ADMINISTRATIVE REMEDIES**

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

_X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

_X_ Yes ___ No (*check one*)

**G. REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief against each Defendant as specified herein:

**I. EQUITABLE RELIEF — ALL DEFENDANTS**

a. DECLARE that the right to consult legal counsel on any matter affecting one's rights, liberty, or interests and the right to petition through the CDOC grievance process are constitutionally protected rights that are inextricably intertwined, and that neither may be conditioned upon the forfeiture of the other by any administrative policy, rule, or practice.

b. DECLARE that AR 850-04 §C.5 is unconstitutional on its face and as applied by Defendants, in that it contains no limiting principle sufficient to prevent its application to attorney communication in the context of active or anticipated litigation, and that its enforcement without a constitutionally compliant saving clause or amendment is void.

c. ENJOIN Defendants, their agents, employees, successors, and all persons acting in concert with them from enforcing AR 850-04 §C.5 in any manner that penalizes, forecloses, denies, or discourages the consultation of legal counsel in connection with the grievance process, unless and until a constitutionally compliant saving clause or amendment has been adopted and approved by this Court.

d. ENJOIN Defendants from engaging in any further retaliatory conduct against Plaintiff arising from his exercise of the right to petition, his consultation of legal counsel, or his pursuit of this or any related litigation.

e. ORDER the reversal of Incident Report 26-1302 and the associated guilty finding entered 2026MAY08, and ORDER the reversal of all adverse actions causally flowing therefrom, including the disciplinary finding arising from the sign-out failure on 2026MAY06 documented as IR 26-1303, which occurred as a direct and proximate result of the retaliatory proceeding that generated the original write-up; and ORDER curative entries into Plaintiff's official CDOC supervision record reflecting these reversals.

f. ORDER that all supervision contacts, disciplinary proceedings, grievance response meetings, and any other official interactions between Defendants or their agents and Plaintiff be recorded by body-worn camera or equivalent audio-video recording technology, with recordings preserved and made available to Plaintiff upon request.

**II. DAMAGES — DEFENDANTS TAFOYA, KEAR, MEDINA, MUSSO, TAYLOR, AND HULSE, EACH INDIVIDUALLY, AND DEFENDANT INTERVENTION, INC. AS ENTITY ONLY (Monell); JOINTLY AND SEVERALLY AS TO ALL DEFENDANTS FOUND TO HAVE CONSPIRED**

**NOTE: No monetary damages are sought against the Colorado Department of Corrections.**

g. AWARD Plaintiff compensatory and consequential damages in amounts to be determined at jury trial, including but not limited to: lost wages; lost program benefits; harm to Plaintiff's institutional record; loss of or delay in the realization of liberty interests arising from the contamination of Plaintiff's parole proceeding with retaliatory disciplinary findings; extreme

emotional distress and terror occasioned by a deliberate scheme targeting Plaintiff's liberty interests and diverting all available resources to his defense; loss of enjoyment of life; humiliation; loss of reputation; and pain and suffering.

h. AWARD punitive and exemplary damages in amounts to be determined at jury trial, based on Defendants' intentional, malicious, and reckless disregard for Plaintiff's clearly established constitutional rights, and their deliberate continuation of the challenged conduct after receiving explicit constitutional warning from Plaintiff and after seeking legal counsel of their own.

**III. FEES, COSTS, AND FURTHER RELIEF**

i. AWARD reasonable attorney fees pursuant to 42 U.S.C. § 1988, all recoverable costs pursuant to 28 U.S.C. § 1920 including filing fees, service fees, paralegal costs, investigatory costs, deposition costs, witness fees, and expert witness fees, and pre- and post-judgment interest at the highest lawful rate, on all claims allowed by law.

j. GRANT any further relief this Court deems just, equitable, and proper.

## H. PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

s/ Eric Patrick Brandt
(Plaintiff's signature)

July 16, 2026
(Date)

(Revised November 2022)