IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
11/17/2026
**JEFFREY P. COLWELL, CLERK**

Civil Action No. 26-cv-02309-RTG

ERIC P. BRANDT,

Plaintiff,

v.

JEREMY TAFOYA, et al.,

Defendants.

**VERIFIED MOTION TO CLARIFY ORDER DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT (ECF 7)**

Plaintiff Eric P. Brandt, *pro se*, respectfully moves under Fed. R. Civ. P. 7(b) for clarification of the Court's Order Directing Plaintiff to File Amended Complaint (ECF 7), as he stated he would in his Verified Motion for Extension of Time, filed November 9, 2026, and his Notice, filed November 16, 2026. The Order directs Plaintiff to file an amended complaint "which addresses these deficiencies." (ECF 7 at 6.) Plaintiff seeks clarification of what those deficiencies entail, so that his Second Amended Complaint can cure them in a single filing. In support, Plaintiff states as follows:

Under D.C.COLO.LCivR 7.1(a), Plaintiff states that no defendant has been served or entered an appearance; opposing consultation was not possible.

## I. BACKGROUND

This is a civil rights action under 42 U.S.C. § 1983. After the Court ordered Plaintiff to cure deficiencies in his original Complaint (ECF 3), Plaintiff filed his First Amended Complaint (ECF 6) ("FAC"), and the Court then directed him to file a Second Amended Complaint addressing the deficiencies identified in its October 9, 2026 Order (ECF 7 at 6). Plaintiff moved to extend that deadline on November 9, 2026; the motion remains pending.

## II. ARGUMENT

### A. Acknowledging the Complexity

Plaintiff acknowledges that, given the complexity of the fact pattern and his *pro se* status, his FAC may be difficult to follow. The record spans many separate actions by eight defendants across two entities over roughly four months, and Plaintiff, who has no legal training, may not have made the core of his claims obvious. He is unsure how to pare the pleading down to address the Court's Rule 8 concerns without omitting facts his claims might require to survive. This motion therefore sets out, in plain terms, what his claims assert, and asks for the Court's guidance on what the Second Amended Complaint must do.

## B. The Nature of Plaintiff's Claims

### *1. The Core of the Case*

#### a. <u>What happened</u>

Plaintiff was directed to complete a specialized state domestic-violence treatment program. He questioned the mandate, without refusing it, because he did not believe he met the program's legal or clinical criteria, and he eventually indicated he would involve his lawyers. The provider ultimately vindicated Plaintiff's concerns, concluding that he did not meet the legal or clinical requirements to be placed in the program at all because Plaintiff has no convictions related to Domestic Violence ("DV"). But by then, Defendants' response to his questioning had escalated. It moved from attempts to suppress treatment questions, to false records, to special searches, to threats of regression, to threats of discipline for communicating with lawyers ostensibly pursuant to a rule, AR 850-04 §C.5, and including the conditioning of the right to petition upon the forfeiture of the right to consult attorneys. At its height, Defendants indeed did punish Plaintiff for petitioning, speaking, and consulting counsel. This case stems from that response.

#### b. <u>The grievance is the vehicle, not the right</u>

Plaintiff is not asserting a right to any grievance procedure, *per se*, but rather the right to raise grievances regarding his conditions of confinement and communicate with his lawyers thereupon without the fear of reprisal. The grievance procedure is merely the vehicle the State provides to formally raise such concerns. Because the PLRA requires that "such administrative remedies as are available are exhausted," 42 U.S.C. § 1997e(a), the initiation of the grievance

process is the first door he must open before he can reach the courts. Punishing him for his good-faith use of the grievance process may state a First Amendment claim. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990*); Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)) ("The filing of prison grievances is constitutionally protected activity."); *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (finding "an arguable basis" for a prisoner's claim that officials retaliated against him for filing grievances, because "if in fact DOC officials retaliated against Fogle based on his filing administrative grievances, they may be liable for a violation of his constitutional rights"). Plaintiff so asserts.

**c. <u>Retaliation need not be independently unlawful</u>**

An adverse action need not be unlawful on its own. Prison officials "may not retaliate against or harass an inmate because of the inmate's exercise of his" constitutional rights, and "[t]his principle applies even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quoting *Smith*, 899 F.2d at 947–48). Although Plaintiff brings no Fourth Amendment claim, and accepts that he could be searched while in custody, the frisks nonetheless matter here because of their timing, motive, and stated reason: they began within minutes of Plaintiff's April 14 evidence-preservation demand, to search for "recording devices," the very evidence that demand sought to preserve. (*See, e.g.*, FAC ¶¶ 38–39, 41–42, 122.) For the same reason, Plaintiff's meetings with CPO McElderry were moved to unrecorded rooms so his ongoing preservation demands could not reach her conduct. (FAC ¶ 41.)

**d. <u>Adverse actions too numerous to list</u>**

Indeed, the adverse actions, which escalated disproportionately, are too numerous to list in this motion. Some examples attached to Plaintiff's protected conduct include:

(1) *<u>Questioning the DV treatment mandate</u>*. Plaintiff's supervising parole officer told him to "stop asking questions," warned, "I can send you back to DOC at any time I want," and documented that treatment was needed "to progress in the matrix and to get to parole." (The FAC pleads these events at ¶¶ 32, 34–35.) On May 6, after Defendants conceded that the treatment mandate was indeed improper, Tafoya recast Plaintiff's questioning of the treatment and his pursuit of legal remedies as "confrontational behaviors" requiring further treatment: "Go get your treatment Mr. Brandt, you need it!" (*Id.* ¶¶ 47, 88, 101.)

(2) *<u>Filing grievances</u>*. Within days of Plaintiff's first grievances, Defendants met to discuss his "not following policy per 850 04 Grievances" and decided that a meeting would occur "to address concerns and way ahead for program compliance and cooperation." (FAC ¶¶ 8, 43.) At that May 6 meeting, Tafoya mischaracterized Plaintiff's filing of multiple grievances as "abuse of the grievance process." (*See id.* ¶¶ 49–50.)

(3) *<u>Communicating with counsel</u>*. Defendants denied Plaintiff's first three grievances solely because he forwarded them to counsel, citing §C.5, without reaching their merits. (FAC ¶ 22.) Tafoya then documented that Plaintiff "should not utilize the grievance process as his grievances are being denied on procedural grounds."

(*See id.* ¶¶ 20–21.) On May 6, Kear issued a disciplinary charge for forwarding his grievances to his lawyers, after she and the other Defendants agreed on this specific course of disciplinary action. (*Id.* ¶¶ 9, 127.)

(4) *Announcing suit and warning officials*. On May 6, Plaintiff warned Defendants to consult their own legal teams before committing further violations; they said they already had, and proceeded. (FAC ¶ 60.) When Plaintiff said he would sue if disciplined for consulting counsel, Tafoya declared that Plaintiff was "now threatening law enforcement officers," a felony allegation made by a law enforcement officer. (*Id.* ¶¶ 55, 100, 103, 107.) Tafoya further recorded the statement as a threat in Plaintiff's chronological records. (*Id.* ¶¶ 54, 106.)

(5) *The evidence-preservation demand*. At 12:47 p.m. on April 14, a process server served Plaintiff's demand to preserve the recordings of his March 31 encounter. A staffing meeting followed immediately, and within minutes of its conclusion staff raised his community threat-risk designation, required two staff at his meetings "as s is making false accusations about everything," and barred cell phones from his case-manager meetings, along with the frisks and room changes described above. (*See* FAC ¶¶ 38–41, 122 (¶ 39 pleading the two-staff rule).)

### 2. *Claim by Claim*

#### a. **Plaintiff's Claim One: AR 850-04 §C.5 Unconstitutional**

The Order describes Claim One only as alleging that AR 850-04 §C.5 "prohibits prisoners from obtaining the assistance of counsel in pursuing grievances." (ECF 7 at 2.) No

part of Section III names or analyzes Claim One, leaving Plaintiff unsure what the Court is asking him to cure. To clarify, Claim One does not suggest that Plaintiff has a right to have counsel pursue grievances on his behalf. Indeed, Plaintiff "was at all times the primary drafter and signatory of his own grievances and merely transmitted copies to counsel." (FAC ¶ 80; *see id.* ¶¶ 7, 19.)

The FAC alleges that, on its face, §C.5 serves no legitimate penological interest: it permits every less-qualified source of help, including family, friends, other offenders, and "jailhouse lawyers," while barring only attorneys, whom the Department's own policy otherwise affirmatively facilitates. (FAC ¶¶ 15–18.) *See Turner v. Safley*, 482 U.S. 78, 89 (1987). As Defendants applied it, consulting counsel about an issue not only permanently forecloses the grievance process on that issue (FAC ¶¶ 20, 24, 74–75), but also subjects Plaintiff to full disciplinary sanctions for merely communicating with an attorney about a grieved issue (*id.* ¶¶ 9 –10, 23, 52, 75). On its face and as applied, §C.5 burdens Plaintiff's rights to petition and to associate and speak with counsel. *See DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) ("The right to retain and consult with an attorney . . . implicates . . . clearly established First Amendment rights of association and free speech."); *see also Evans v. Moseley*, 455 F.2d 1084, 1087 (10th Cir. 1972) (citing *LeVier v. Woodson*, 443 F.2d 360, 361 (10th Cir. 1971)) (describing *LeVier*'s "narrow exception" for a prisoner's correspondence with his attorney regarding "the condition of his incarceration").

Because the Order identifies no deficiency specific to Claim One, Plaintiff asks the Court to clarify whether Claim One, so understood, requires any specific curative action beyond the generalized Rule 8 concerns and Part III.B's limits on relief.

**b. <u>Plaintiff's Claim Two: Retaliation</u>**

The Order reads Claim Two narrowly as alleging retaliation "for communicating with his attorneys about his grievances." (ECF 7 at 2.) That is merely one strand of the claim, and understates the true gravamen of the misconduct. While discipline for attorney communication was perhaps the most overt point, it was one act in a sustained campaign of retaliation that escalated following Plaintiff's questioning of his DV treatment mandate, and persists to this day.

Claim Two alleges that all Defendants retaliated against Plaintiff for a series of protected acts, including: questioning the basis of his DV treatment mandate, requesting his records and serving evidence-preservation demands, filing grievances, communicating with counsel, and announcing his intent to sue. (FAC ¶¶ 31–32, 37–38, 43–44, 54, 56, 58.) Each act drew an escalating response, and Plaintiff's record "degraded rapidly and in direct response to each protected act he took thereafter." (*Id.* ¶ 36; *see id.* ¶¶ 59, 66–67.)

The Order concludes that "because Plaintiff has no constitutional right to file a grievance, he cannot show he 'engaged in constitutionally protected activity' required to prove retaliation." (ECF 7 at 6 (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)).) Applying the same *Shero* standard, the Tenth Circuit has stated that "[t]he filing of prison grievances is constitutionally protected activity." *Requena*, 893 F.3d at 1211. The Order's sentence tracks *Van Hallcy v. Clements*, 519 F. App'x 521, 524 (10th Cir. 2013) (unpublished), which went on to

consider the prisoner's complaint as protected speech and resolved the claim on causation, because the adverse action came "months after he complained." Here, Defendants responded within minutes in some instances, certainly within several days in most. (FAC ¶¶ 39, 122.) Other protected acts do not depend on the grievance procedure at all. *See DeLoach*, 922 F.2d at 620 (consulting counsel); *Entler v. Gregoire*, 872 F.3d 1031, 1042 (9th Cir. 2017) ("it is illogical to conclude that prison officials may punish a prisoner for threatening to sue when it would be unconstitutional to punish a prisoner for actually suing"); *Bor. of Duryea v. Guarnieri*, 564 U.S. 379, 393 (2011) ("the right to petition is not limited to petitions lodged under formal procedures"). Claim Two invokes access to the courts (FAC ¶¶ 31, 68) as a right Plaintiff was punished for exercising, or seeking to exercise, not one he was denied; the Order's access analysis (ECF 7 at 5–6) addresses denial. *See Smith*, 899 F.2d at 947 ("Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.").

Because Claim Two does not actually rest on a right to any grievance procedure, but rather on Defendants' series of retaliatory adverse actions in direct response to Plaintiff's protected petitioning activities and the ensuing fallout, Plaintiff asks the Court to clarify whether Claim Two, so understood, requires any specific curative action beyond the generalized Rule 8 concerns and Part III.B's limits on relief.

**c. <u>Plaintiff's Claim Three: Access to Courts (Not Reasserted)</u>**

Plaintiff did not reassert Claim Three (access to courts) in the FAC (¶ 69). The Court renumbered the remaining claims *sua sponte*, creating an enumeration incongruence. For

example, the Court enumerated Plaintiff's Claim Four as "claim three," and so on. (ECF 7 at 2–3.) Plaintiff will continue to use his original claim numbers, with Claim Three retired rather than reassigned, and respectfully submits that a single, consistent numbering will keep the record clear for the Court and the parties. *See Gallagher v. Shelton*, 587 F.3d 1063, 1066 n.1 (10th Cir. 2009) (referring to the plaintiff's counts by his own numbering after his amended complaint added counts).

**d. Plaintiff's Claim Four** (ECF 7 THREE)**: Administrative Remedies Foreclosed**

The Order's discussion of grievances narrowly treats Claim Four as a challenge to the grievance procedure itself. (ECF 7 at 5–6.) It is not; the grievance procedure was the instrument used by the Defendants to collect the toll. Claim Four challenges the toll: the forced choice between two protected activities.

The PLRA makes the grievance process the mandatory gateway to federal court, and AR 850-04 requires Plaintiff to use it. (FAC ¶¶ 71–73.) As Defendants applied §C.5, once Plaintiff consulted counsel about an issue, he could no longer grieve it, and grieving it after consultation subjected him to discipline. (*Id.* ¶¶ 74–75.) Defendants collected that toll through the procedure itself, denying his grievances and appeals on §C.5 grounds without reaching their merits, and disciplining him for consulting counsel. (*Id.* ¶¶ 77–78, 84.) Plaintiff was thus "compelled to choose between his First Amendment right to consult counsel and access to the mandatory gateway to court." (*Id.* ¶ 82.) Even where a person has no right to a government benefit, once the government establishes the benefit through a published process available to a class of

otherwise qualified persons, it "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

Because Claim Four challenges the First Amendment toll rather than the procedure itself, Plaintiff asks the Court to clarify whether Claim Four, so understood, requires any specific curative action beyond the generalized Rule 8 concerns and Part III.B's limits on relief.

**e. Plaintiff's Claim Five (ECF 7 Four): Defective Disciplinary Proceeding**

The Order describes Claim Five as alleging that *Tafoya* documented Plaintiff as non-compliant, which "exposed Plaintiff to enhanced programming/treatment and adverse program progression," and holds that Plaintiff has no liberty interest in a particular course of programming or treatment. (ECF 7 at 2, 4–5 (quoting FAC ¶ 95).) However, *Tafoya* is not a defendant to Claim Five. Claim Five is pleaded against *Kear*, *Medina*, *Taylor*, and *Intervention, Inc.* (FAC at 19), and challenges the *disciplinary proceeding* on IR 26-1302. It asserts the Fourteenth Amendment right to procedural due process: adequate process before a fair and impartial tribunal. (FAC ¶ 96.)

The disciplinary process was a closed loop: Kear, the Director, issued the charge; Medina, her designee, adjudicated it; and Taylor, her subordinate, who also attended the meeting at which the charge was decided, denied the appeal. (FAC ¶¶ 92–93; *see id.* ¶ 128.) No official outside Kear's chain of command reviewed the charge at any stage, and the guilty finding was entered without addressing Plaintiff's defense or making independent findings. (*Id.* ¶¶ 10, 93.) The finding broke an otherwise model five-year institutional record. (*Id.* ¶ 94.) In five years of custody before this charge, Plaintiff had never been found guilty of a disciplinary violation. The

first finding ever entered against him was this one, for sending paperwork concerning conditions of confinement to his lawyers (*see Evans*, 455 F.2d at 1087). The contaminated record now follows him through supervision.

Part III.C addresses an interest in programming or treatment, which was not the gravamen of the claim, and is silent on the disciplinary proceeding or its effect on Plaintiff's record. Plaintiff therefore asks the Court to clarify whether Part III.C reaches Claim Five as so understood and, if so, what interest Claim Five must plead to proceed.

**f. Plaintiff's Claim Six (ECF 7 FIVE): Retaliatory Criminal Threat**

The Order describes Claim Six by quoting Tafoya's threat of further discipline (ECF 7 at 2–3 (quoting FAC ¶ 99)), but that is part of the backdrop. What Claim Six actually alleges is that when Plaintiff announced he would sue if disciplined for communicating with counsel, Tafoya declared that Plaintiff was "now threatening law enforcement officers" and recorded the statement as a criminal threat, "because of, and only because of, Plaintiff's statement that he would sue." (FAC ¶¶ 98, 100, 103–104, 106–107, 115.) Given the totality of the escalating circumstances leading to that moment, Plaintiff reasonably feared not only regression back to prison, but a new felony prosecution. This action was more than sufficient to chill a person of ordinary firmness. (*Id.* ¶¶ 55, 108–111, 114.)

The Order's retaliation analysis rests on the absence of a right to file a grievance (ECF 7 at 6). However, Claim Six's protected activity is not a grievance; it is the announcement of a lawsuit. *See* Entler, 872 F.3d at 1042–43 (denying qualified immunity because a reasonable

official would have understood that disciplining a prisoner for threatening to sue, "even if verbal," was "constitutionally impermissible").

Plaintiff therefore asks the Court to clarify whether Claim Six, so understood, requires any specific curative action beyond the generalized Rule 8 concerns and Part III.B's limits on relief.

**g. <u>Plaintiff's Claim Seven</u>** <u>(ECF 7 SIX)</u>**<u>: Conspiracy (42 U.S.C. § 1983)</u>**

The Order accurately describes Claim Seven: an agreement among Defendants "to discipline Plaintiff for forwarding his grievances to his attorneys, and to condition his access to the grievance process on his not consulting them." (ECF 7 at 3 (quoting FAC ¶ 127).) The agreement was formed at the April 29, 2026 cross-agency meeting and carried out through the May 6 meetings, the disciplinary charge, the guilty finding, and the denial of Plaintiff's appeal. (FAC ¶¶ 8–9, 127, 129–132.)

The Order does not separately analyze Claim Seven, which stands with Claims Two and Four. Plaintiff asks the Court to clarify whether Claim Seven, so understood, requires any specific curative action beyond the generalized Rule 8 concerns and Part III.B's limits on relief.

***3. The Eleventh Amendment (Part III.B)***

Plaintiff thanks the Court for addressing Eleventh Amendment immunity (ECF 7 at 3–4). The FAC sought no damages from the Colorado Department of Corrections, and sought damages only from the individual defendants in their individual capacities and from Intervention, Inc. (FAC at 27; ECF 7 at 3). Plaintiff does not seek retroactive declaratory relief against any defendant in an official capacity. Where the FAC's request for declaratory relief could be read

to seek backward-looking relief against the State, the Second Amended Complaint will limit declaratory relief to prospective relief. AR 850-04 §C.5 continues to govern Plaintiff on parole. Any official-capacity claim will seek only prospective relief for that ongoing violation of federal law, and for correction of disciplinary and supervision records that remain in use, against the state official responsible. *See Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001). Plaintiff's individual-capacity claims for damages, including nominal damages, are not affected by Part III.B. *See Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1518 n.1, 1526–27 (10th Cir. 1992); *Uzuegbunam v. Preczewski*, 592 U.S. 279, 283 (2021).

### C. Rule 8: Where to Draw the Line

The Order found that Plaintiff's "allegations are overly lengthy and clouded with unnecessary, obscuring verbiage which makes them difficult to follow." (ECF 7 at 3.) Plaintiff's difficulty is where to draw the line. The Court's Prisoner Complaint form directs that, for each claim, the plaintiff "state **all** facts that support your claim" (FAC at 7 (emphasis added)), and the Court limited the complaint to thirty pages (ECF 3 at 2–3). This is a fact-intensive case; even within thirty pages, Plaintiff could not set out all the facts he believes support his claims, and he does not know at what point an omitted fact leaves a claim short of plausibility.

The shared background is part of every claim: the escalation (partially set out in Section II.B above) gives each adverse action its retaliatory meaning. Because fully repeating that background in each claim would be repetitive, and stripping it makes the claims appear thin, Plaintiff attempted to split common facts from individual claims, except where keeping a fact close to the claim it supports would help the reader follow the story. Nor can Plaintiff tell which

allegations the Court considers "unnecessary, obscuring verbiage," and he respectfully asks the Court to identify them by example, so that he can cure the deficiency the Order found. *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Rule 8 is concerned primarily with intelligibility. In *Mann v. Boatright*, the 99-page complaint failed not chiefly because of its length ("prolixity is not even the main problem") but because it gave no clarity "as to whom plaintiffs are suing for what wrongs." 477 F.3d 1140, 1147–48 (10th Cir. 2007) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)). *Pro se* litigants "may be hard pressed to conform to Rule 8(a)'s requirement of brevity while attempting to provide the defendant fair notice," and so receive "greater leeway." *Toevs v. Reid*, 267 F. App'x 817, 819 (10th Cir. 2008) (unpublished). Where a *pro se* complaint has fallen short, this Court has given claim-specific instructions, and the Tenth Circuit has relied on those instructions in affirming. *See Allison v. Boulder Cnty.*, No. 24-1434, slip op. at 7 n.3 (10th Cir. July 31, 2025) (unpublished) ("painstakingly precise instructions on how to fix the deficiencies"). *Allison* is distinguishable: the FAC is fully self-contained and on the Court's form, within its thirty-page limit, and pleads six claims against eight named defendants, each under its own heading, with dated acts by named actors. The third amended complaint in *Allison* asserted nineteen claims against fifty-eight defendants, many identified only by four-digit numbers, and built claims from cross-references to an earlier pleading. *See id.* at 6.

The Tenth Circuit has described what a *pro se* complaint must explain: "what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious*, 492

F.3d at 1163. To test where the line falls, Plaintiff takes that standard as the floor and offers Claim Six reduced to its four elements:

> On May 6, 2026, Defendant Tafoya recorded Plaintiff's announced intent to sue as "threatening law enforcement officers," because Plaintiff said he would sue. Plaintiff reasonably feared arrest and return to prison. Tafoya thereby violated Plaintiff's First Amendment right to petition and to be free from retaliation for petitioning.

Compare FAC ¶¶ 97–116. Plaintiff asks whether a claim stated this way, read with a single shared statement of facts, states a plausible claim, so that the Second Amended Complaint can clear screening without further rounds of amendment and serve judicial economy in the proceedings that follow (e.g., anticipated Rule 12(b)).

**D. Questions for Clarification**

(1) Whether Parts III.C and III.D of the Order require omitting Plaintiff's claims as he has described them in Section II.B above, or permit repleading them on the rights described there; whether any claim, so described, requires specific curative action beyond the generalized Rule 8 concerns and Part III.B's limits on relief; and, if Part III.C reaches Claim Five, what interest Claim Five must plead.

(2) Whether a claim pleaded in the form of the example in Section II.C above, read with a single shared statement of facts, satisfies Rule 8.

(3) Whether such a construct viably states a plausible claim.

(4) Whether the Court will identify, by example, the allegations it considers unnecessary or obscuring.

## III. CONCLUSION

WHEREFORE, Plaintiff Eric P. Brandt respectfully requests that this Court enter an Order clarifying its Order Directing Plaintiff to File Amended Complaint (ECF 7) by answering the questions set out in Section II.D above.

## VERIFICATION

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 17th day of November, 2026.

s/Eric P. Brandt
Eric P. Brandt, Plaintiff Pro Se
11452 County Road B
Manzanola, Colorado 81058
brandte007@gmail.com
719-281-9319

---

## CERTIFICATE OF SERVICE

Plaintiff certifies that the foregoing motion has been filed with the Clerk of Court via electronic submission on November 17, 2026. No defendant has been served with process in this action, and no defendant has entered an appearance. Service of this motion upon defendants is therefore not required at this time.

s/Eric P. Brandt